**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>[5] EDUARDO PABON-MANDRELL,<br><br>Defendant. | CRIMINAL NO. 07-121 (ADC)(HRV) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      INTRODUCTION**

Pro se defendant Eduardo Pabon-Mandrell (hereinafter "defendant" or Mr. Pabon-Mandrell") has filed a motion for reduction of sentence raising several grounds for relief.  (Docket No. 3049).  He moves the Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) asserting that extraordinary and compelling reasons exist warranting a reduction of his life sentence to time served.  (*Id.*).  Defendant also argues that he is entitled to a sentence reduction under section 404 of the First Step Act of 2018 ("FSA").  The United States has filed an opposition to defendant's motion. (Docket No. 3066).  The matter has been referred to me for report and recommendation.  (Docket No. 3067).

For the reasons set forth below, I recommend that defendant's motion be GRANTED in part and DENIED in part.  It should be GRANTED as to the request for

sentence reduction under section 404 of the FSA.   It should be denied without prejudice as to the request for compassionate release.   In making this recommendation, I express no opinion as to what the resulting sentence should be if the presiding District Judge was at all inclined to adopt my recommendation.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

In March of 2007, a grand jury sitting in this district returned an indictment charging Mr. Pabon-Mandrell and others with a conspiracy to possess with intent to distribute controlled substances within 1,000 feet of a protected location, all in violation to 21 U.S.C. §§ 841(a), 846 and 860. (Docket No. 1). The indictment alleged that the conspiracy involved in excess of one (1) kilogram of heroin, in excess of five (5) kilograms of cocaine, in excess 50 grams of cocaine base, and more than 100 kilograms of marijuana. (*Id.*). The indictment also charged that all co-conspirators were members of a gang called "las avispas" ("the wasps") that operated drug distribution points within the municipality of Guayama, Puerto Rico. It was further alleged that some members of the drug distribution organization would possess firearms and would kill or attempt to kill other members of the same organization or persons belonging to rival gangs to protect and maintain control of the drug points. Herein defendant, Mr. Pabon-Mandrell, was alleged to be a leader and organizer within the conspiracy, particularly with respect to the La Plumita drug point in Borinquen Ward.  He was also characterized as an enforcer for the drug organization.

Mr. Pabon-Mandrell exercised his right to trial.  Prior to jury selection on the first day of trial, the government filed an "Information in Accordance with Title 21 United States Code § 851" submitting that defendant had three prior Puerto Rico drug

convictions, identified as GSC2003G0748, GSC2003G0749 and GSC2005G0402, that had become final. (Docket No. 1026). According to the government, these prior convictions triggered the enhanced penalties in 21 U.S.C. § 841(b)(1)(A), resulting in a sentencing exposure of mandatory life imprisonment. (*Id.*). Following a 12-day trial, the jury found Mr. Pabon-Mandrell guilty of count one of the indictment. (Docket Nos. 1123, 1127). The jury made specific findings as to drug quantity, attributing to the defendant 50 grams or more of crack, one (1) kilogram or more of heroin, five (5) kilograms or more of powder cocaine and 100 kilograms or more of marijuana. (Docket No. 1123).

A sentencing hearing was held on June 6, 2008. The Court addressed challenges to the 21 U.S.C. § 851 information, ultimately finding that Mr. Pabon-Mandrell was subject to a mandatory life sentence. (Docket No. 1894). The Court calculated the advisory sentencing guidelines as follows: a base offense level of 40 was determined under U.S.S.G §§ 2D1.1 and 2D1.2. In setting the base offense level, the Court attributed to the defendant 4.5 kilograms or more of cocaine base[1] and applied the protected location enhancement. (*Id.* at 69). The Court also added a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of firearms and a four-level adjustment under U.S.S.G. § 3B1.1 for his role in the offense. There being no other adjustments, the total

---

[1] The sentencing transcript reflects that in calculating the guidelines, the Court attributed to the defendant 4.5 kilograms or more of "cocaine" resulting in a base offense level of 38. (Docket No. 1894 at 69). I note this is clearly a mistake. First, 4.5 kilograms of powder cocaine would not result in a base offense level of 38, then, or today. *See* U.S.S.G. § 2D1.1(c). Second, the PSR estimated a conspiracy-wide amount of 109 kilograms of cocaine base. (PSR, at 8, n.1.). Under the version of the guidelines manual in effect at the time of sentencing, any amount above 4.5 kilograms of crack triggered the highest base offense level. Therefore, I assume that this is a typographical error or that the Court misspoke. There should be no doubt in this case that we are dealing with cocaine base as the controlled substance that drove the guideline calculation.

adjusted offense level was 46.  By operation of the guidelines, the level was reduced to 43. *See* U.S.S.G., Ch. 5 Sentencing Table, Cmt. Note 2.  Based on a total offense level of 43 and a Criminal History Category of I, the advisory guideline sentencing range ("GSR") was life, which was also the mandatory minimum sentence required by virtue of the § 851 information.

The Court sentenced defendant to life imprisonment. (*Id*. at 70-71; *see also* Judgment, Docket No. 1575).  Should defendant be ever released, he is to serve a 10-year term of supervised release.  The First Circuit affirmed both the conviction and sentence of Mr. Pabon-Mandrell. *See United States v. Rivera-Rodriguez*, 617 F.3d 581 (1st Cir. 2010).  Defendant has unsuccessfully sought post-conviction relief.  *See Pabon-Mandrell v. United States*, 91 F. Supp. 3d 198 (D.P.R. 2015), *certificate of appealability denied by* No. 15-1654, 2017 U.S. App. LEXIS 27243 (1st Cir., Aug. 24, 2017).[2]

On June 20, 2023, the defendant filed, *pro se*, the instant motion for sentence modification, invoking 18 U.S.C. § 3582(c)(1)(A)(i) and § 3582(c)(2). (Docket No. 3049). The government opposed on October 27, 2023 (Docket No. 3064), as amended on December 8, 2023. (Docket No. 3066).  The presiding District Judge has referred these matters to me for report and recommendation. (Docket No. 3067).

---

[2] Mr. Pabon-Mandrell filed a successive motion to vacate his sentence under 28 U.S.C. § 2255. (Docket No. 3029; Civil No. 23-1050 (ADC)).  That matter was also referred to me for report and recommendation. (Docket No. 3067).  I issued my report and recommendation on December 11, 2023, recommending dismissal of the petition.  (Civil No. 23-1050 (ADC), Docket No. 4).

## III.    APPLICABLE LAW AND DISCUSSION

### A. Compassionate Release

Defendant makes several arguments in support of eligibility and sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). He claims that he has presented extraordinary and compelling reasons that warrant said reduction.  First, he avers that he was prejudiced and his rights substantially affected because the language of the sentencing guidelines does not include inchoate crimes.  Second, defendant argues that the imposition of a mandatory term of life imprisonment under a three-strike scenario such as his leads to an absurd result that Congress could not have intended. Third, he claims that essential facts and elements of the offense of conviction were not submitted to the jury to be proven beyond a reasonable doubt in violation to his Sixth Amendment right and of the rules announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013).  Fourth, defendant maintains that his difficult upbringing and post-sentence rehabilitation warrant a sentence reduction.  As I shall discuss below, none of these arguments, individually, or in the aggregate, meet the compassionate release standard.

### 1. *Legal Framework*

The so-called compassionate release statute, allows a court acting on a defendant-filed motion—as long as such reduction is consistent "with applicable policy statements issued by the Sentencing Commission"—to

> reduce the term of imprisonment (and... impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds

5

> that—(i) extraordinary and compelling reasons warrant such
> a reduction . . . .

18 U.S.C. § 3582(c)(1)(A)(i).  This statute is one of the very few exceptions to the rule that once imposed, a term of imprisonment shall not be modified. *United States v. Saccoccia*, 10 F.4th 1, 3 (1st Cir. 2021).

To grant a compassionate release motion, the court must find that a defendant has established three things: (1) that extraordinary and compelling reasons warrant a sentence reduction; (2) that the reduction is consistent with the applicable policy statements issued by the Sentencing Commission; and (3) that relief is appropriate under the circumstances of the case after considering the applicable 18 U.S.C. § 3553(a) factors. *See United States v. Quiros-Morales*, 83 F.4th 79, 84 (1st Cir. 2023). Whether the reasons advanced by the defendant are extraordinary and compelling is "guided by the plain meaning of those terms." *United States v. Canales-Ramos*, 19 F.4th 561, 566 (1st Cir. 2021).  "The plain meaning of 'extraordinary' suggests that a qualifying reason must be a reason that is beyond the mine-run either in fact or in degree . . . .  By the same token, the plain meaning of 'compelling' suggests that a qualifying reason must be a reason that is both powerful and convincing." *Id.* (citations omitted).

Prior to November 1 of this year, and because the Sentencing Commission had not issued any policy statements applicable to prisoner-initiated compassionate release motions, the First Circuit had held that district courts had discretion to "consider any complex of circumstances raised by a defendant, as forming an extraordinary and compelling reason warranting relief." *United States v. Ruvalcaba*, 26 F.4th 14, 28 (1st Cir. 2022).  The Court of Appeals concluded that non-retroactive changes in the law, such

as the FSA's amendments to the mandatory minimum penalties under 21 U.S.C. § 841(b)(1)(A), could be considered in the determination of whether extraordinary and compelling reasons existed in a particular case. *Id.* at 24.  Subsequently, in *United States v. Trenkler*, 47 F.4th 42, 47-48 (1st Cir. 2022), it was clarified that pursuant to the holding in *Ruvalcaba*, district courts "may conduct a holistic review to determine whether the individualized circumstances [of the defendant], taken in the aggregate, present an 'extraordinary and compelling' reason to grant compassionate release," including alleged sentencing errors.  The "any complex of circumstances" approach, is shaped, however, by the arguments advanced by the defendant, such as when the defendant presents separate arguments in support of his request rather than multiple arguments in favor of the sentence reduction. *United States v. Gonzalez*, 68 F.4th 699, 706 (1st Cir. 2023).

It is imperative to note that the Sentencing Commission's policy statement regarding defendant-filed motions for compassionate release is now in effect. *See* U.S.G.G. § 1B1.13 (Nov. 1, 2023).  Consequently, the court "must take heed of" the policy statement as noted in *United States v. Rivera-Rodriguez*, 75 F.4th 1, 18 n.22 (1st Cir. 2023), and consider its scope in deciding what constitutes an extraordinary and compelling reason.  *United States v. Quiros-Morales*, 83 F.4th at 84.

The Commission has identified six circumstances that individually or in combination may provide extraordinary and compelling reasons for a reduction in sentence. U.S.S.G. § 1B1.13(b). These are: certain medical circumstances such as a terminal illness or inability to receive medical care while incarcerated, *id.*, § 1B1.13(b)(1); the defendant's age, *id.* § 1B1.13(b)(2); the defendant's family circumstances, *id.* §

1B1.13(b)(3); the defendant having been the victim of sexual or physical abuse by or at the direction of a correctional officer, *id.* § 1B1.13(b)(4); a catch-all provision where any other reason or combination of reasons similar in gravity to those described in (1) through (4), *id.* § 1B.13(b)(5); and the defendant received an unusually long sentence, *id.* § 1B1.13(b)(6).

The last identified circumstance—an unusually long sentence—specifically provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6). But changes in the law, including amendments to the guidelines that have not been made retroactive, "shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. U.S.S.G. § 1B1.13(c). On the other hand, if the defendant establishes extraordinary and compelling reasons warranting a reduction, "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*

Lastly, the policy statement requires the court to make a finding that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). The factors include the nature

and circumstances of the offense, the weight of the evidence, the history and characteristics of the person, and the nature and seriousness that the release of the person would pose to any person or the community.  18 U.S.C. § 3142(g).

With the above legal framework in mind, I discuss the defendant's arguments in favor of compassionate release in the same order he has presented them.

### 2.  *Exhaustion of Administrative Remedies*

Before discussing the merits of Mr. Pabon-Mandrell's arguments, a threshold matter must be addressed. Prior to entertaining a defendant-filed motion for compassionate release, the court must be satisfied that the defendant fully exhausted administrative remedies, or that 30 days elapsed without the director of the Bureau of Prisons having brought such a motion on the defendant's behalf despite a request to the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Texeira-Nieves*, 23 F. 4th 48, 52-53 (1st Cir. 2022).

In this case, Mr. Pabon-Mandrell has presented evidence in the form of an attachment to his motion, showing that on May 1, 2023, he requested from the warden of his facility that a reduction in sentence or compassionate release motion be filed on his behalf. (Docket No. 3049-1). On May 10, 2023, the warden denied defendant's request. (*Id.*). There is no evidence in the record that defendant pursued the administrative appellate process within the Bureau of Prisons. Thus, the defendant's failure to exhaust remedies would have been sufficient grounds to deny without prejudice the compassionate release petition. *See United States v. Ayala-Martinez*, No. 97-082 (RAM), 2022 WL 13946049, 2022 U.S. Dist. LEXIS 181077 (D.P.R. Sept. 28, 2022).

Nevertheless, the exhaustion requirement is not a jurisdictional bar; rather, it is a mandatory claim processing rule. *See United States v. Texeira-Nieves*, 23 F.4th at 53 ("In our judgment . . . [the] exhaustion requirement is not a jurisdictional limitation . . . ."). As such, the government can waive it "either expressly or by failing to raise it as a defense." *United States v. Newton*, No. 17-cr-0073-JAW, 2023 WL 8529442; 2023 U.S. Dist. LEXIS 218588 (D. Me. Dec. 8, 2023)(citations omitted). The government did not raise the issue of exhaustion in its opposition, choosing instead to respond to the merits of defendant's petition. Accordingly, I find that the government has waived the exhaustion defense and recommend that the defendant's motion be decided on its merits.

### 3. Analysis

#### a. Inchoate offenses

Mr. Pabon-Mandrell argues that it was error for the court to impose a mandatory life sentence given that two of the predicate offenses for the enhancement were inchoate drug offenses that did not qualify as controlled substances offenses under the plain language of U.S.S. G. § 4B1.2. (Docket No. 3049 at 4). The defendant is wrong. For starters, the mandatory life sentence enhanced penalty did not come about as a result of a guideline application. The mandatory life sentence was premised on the statutory penalties set forth in 21 U.S.C. § 841(b), as triggered by the filing of the 21 U.S.C. § 851 information. The definition of "serious drug offense" in 18 U.S.C. § 924(e) is what controlled, not the guidelines definition of "controlled substance offense" in guideline section 4B1.2. Further, I agree with the government's position that the defendant's argument is not cognizable in the context of compassionate release since section

3582(c)(1)(A) "naturally precludes classic post-conviction arguments" for the District Court to "recognize and correct what the defendant says is an illegal conviction or sentence." *Trenkler*, 47 F.4th at 48 (citing *Ruvalcaba*, 26 F.4th at 26).

In any event, caselaw from the First Circuit forecloses the argument that inchoate drug offenses are excluded from the definition of "serious drug offense", or the guideline definition of controlled substance offense, for that matter. *See United States v. Brown*, 500 F.3d 48, 60 (1st Cir. 2007)(holding that attempt state drug convictions qualify as "felony drug offenses" under the ACCA); *United States v. McKenney*, 450 F.3d 39, 42 (1st Cir. 2006)(finding that a conspiracy to violate a state drug law falls under the definition of "serious drug offense."); and *United States v. Rodriguez-Rivera*, 989 F.3d 183, 190 (1st Cir. 2020)(federal conspiracy to possess with intent to distribute is a controlled substance offense under the guideline definition).

### b. Mandatory life sentence – absurd result

Of all the arguments defendant makes, this is the one that comes closest to establishing the existence of an extraordinary and compelling reason. Liberally construed, as the defendant is appearing *pro se*, the argument sounds like a claim that he received an unusually long sentence, one that he probably would not have received today given recent changes in the law. *See* U.S.S.G. § 1B1.13. Even the government acknowledges that under the current statutory regime following the enactment of the FSA, Mr. Pabon-Mandrell would not be subject to a mandatory life sentence. (Docket No. 3066 at 5). Certainly, the defendant has served more than 10 years of his sentence. And in my view, had the sentencing judge not been required to impose a mandatory sentence

of life imprisonment, there is a good chance that a downwardly variant sentence would have been imposed.

I base my opinion on the fact that Mr. Pabon-Mandrell is the only defendant in this case that originally received, and continues to be under, a life sentence.[3]  Other defendants—like defendant number one Jose Rivera-Moreno—that went to trial and had leadership roles, and whose GSRs were life under the advisory guidelines, received substantial term-of-year sentences, but not life. (*See* Docket Nos. 1623, 1902).  Similarly, co-defendants like Gabriel Rivera-Rodriguez and Excel A. Muniz-Massa, defendants seven (7) and 16 respectively, and who were implicated in murders, received sentences of less than life. (Docket Nos. 1514, 1555).

The obstacle that the defendant's position presents is that even if the Court was inclined to find that his unusually long sentence constituted an extraordinary and compelling reason to consider him a candidate for compassionate release, he has failed to put the Court in a position to conduct a proper balancing of the section 3553(a) factors, and to determine that he is no longer a danger to the community. *See United States v. Ebbers*, 432 F. Supp. 3d 421, 430-31 (S.D.N.Y. 2020)(the court "should assess whether [the section 3553(a) factors] outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence.")  I need not dwell further on this point

---

[3] The mandatory life sentence of co-defendant Christian Arzola-Martinez, defendant number 2, was subsequently reduced to 24 years following the Court's granting of his habeas petition under 28 U.S.C. § 2255. (Docket Nos. 2418, 2472).

because indisputably, at the time of the original sentence, the Court was more than justified in making a finding of dangerousness. The defendant was one of the leaders of a rather violent drug organization. He was characterized as an enforcer who was either in possession of, or with knowledge that others possessed firearms.  He also had an arrest record that included serious violent offenses such as murder, and weapons law violations. And regardless of his criminal history category of I, he was not really a first-time offender.

In a rather weak attempt to frame his request for relief as being consistent with the 3553(a) factors, defendant submits in conclusory fashion that his young age, difficult upbringing, and post-sentence rehabilitation should carry the day.  He also argues that a life sentence is unreasonable and greater than necessary because it results in an unwarranted sentencing disparity with other similarly situated defendants. He complains of a broken system that results in mass incarceration and that has failed to deter the drug trade.  According to Mr. Pabon-Mandrell, a life sentence for a non-violent drug offense is greater than necessary to reflect the seriousness of his crime, promote respect for the law, provide just punishment and afford deterrence.

Unfortunately, the record is missing important information that would have allowed the Court to conduct a proper balancing of the section 3553(a) factors and to determine whether releasing the defendant would pose a danger to the community. Especially when the defendant is asking the Court to take the extraordinary step of reducing his life sentence to time served.  The defendant has not submitted any information about his efforts as an inmate to procure his own rehabilitation such as educational courses taken, vocational training, work assignments or disciplinary record. There is also nothing submitted in the form of a release plan or family support.

I find that neither his age nor the perceived sentencing disparities support compassionate release. *See United States v. Gomez-Olmeda*, No. 03-073 (RAM), 2023 U.S. Dist. LEXIS 92462 at \*6-9; 2023 WL 3641485 (D.P.R., May 25, 2023). I also find that the difficult upbringing argument is belied by information gathered during the pre-sentence investigation. The PSR mentions that Mr. Pabon-Mandrell was raised in a loving home where all of his basic needs were satisfied. Inexplicably, he began engaging in acts of delinquency at an early age. But nothing in the record suggests that his engaging in criminal conduct was related to a troubled childhood or adolescence. In fact, at sentencing, the presiding Judge noted:

> THE COURT: I must say that I have carefully reviewed the trial testimony, the jury verdict is quite clear. I have reviewed carefully as well the presentence investigation report which certainly reflects this individual comes from a family that is law abiding. All his relatives have been gainfully employed. All his basic needs were satisfied. We are not talking here about a person with a traumatic childhood that had no other means or teaching.

(Sentencing Transcript, Docket No. 1894 at 65).

Considering the record, I find that even if Mr. Pabon-Mandrell has met the "extraordinary and compelling reason" prong on account of an unusually long sentence that likely would not have been imposed today, he falls short on showing that the section 3553(a) factors warrant a sentence reduction. After all, the First Circuit has held that "[a]defendant who demonstrates both that extraordinary and compelling reasons exist for a sentence reduction and that such reduction is consistent with the applicable policy statement must clear yet another hurdle[;] [h]e must persuade the district court that the section 3553(a) factors weigh in favor of a sentence reduction." *United States v. Texeira-*

*Nieves*, 23 F.4th at 54.  For much the same reasons, defendant has failed to meet his burden of establishing that his early release would not pose a danger to the community.  Accordingly, I recommend that compassionate release be denied without prejudice of the defendant re-filing a properly supported petition.

### c.  *Apprendi* and *Alleyne*

Although not entirely clear, it appears that defendant makes two separate arguments.  He submits that elements such as drug weight and elements of conspiracy were not submitted to the jury and proven beyond a reasonable doubt in violation to his Sixth Amendment right to a trial by jury as held by the progeny of *Apprendi*, including *Alleyne*. He further claims that "his enhanced sentence is illegal" because "the sentencing court calculated his sentence and acted outside of its authority based on facts found by a judge by a preponderance of the evidence . . . ." (Docket No. 3049 at 13).  Defendant's argument is easily disposed of on both procedural and substantive grounds.  As is the case with inchoate offenses, compassionate release is not the vehicle through which a defendant can bring habeas-type challenges to final convictions and sentences. *Trenkler*, 47 F.4th at 48.  Moreover, on the merits, the claim necessarily fails.

The Court did in fact instruct the jury on the elements of conspiracy and asked the trier of fact to make findings as to the quantities of drugs attributable to the defendants. (Docket No. 1119 at 26-28).  The jury verdict form reflects that the jury indeed made findings as to drug quantity. (Docket No. 1123).  Furthermore, to the extent the defendant is arguing that there was *Alleyne* error with respect to the enhanced mandatory life imprisonment penalty, the argument is without merit.  Neither *Apprendi* nor *Alleyne* are implicated when the fact that is used to enhance statutory maximums or minimums is a

prior conviction.  *See United States v. Rabb*, 5 F.4th 95, 104 (1st Cir. 2021)(noting that the Supreme Court carved out an exception for prior convictions by refusing to overruled *Almendarez-Torres v. United States,* 523 U.S. 224 (1998) when deciding both *Apprendi* and *Alleyne*.).

### d.  Difficult upbringing and Post-Sentence Rehabilitation

As previously stated, the defendant's failure to develop his position regarding the 18 U.S.C. § 3553(a) factors as they apply to the present matter has proven fatal to the one potentially meritorious compassionate release argument—that his sentence was unusually long.   The argument that his difficult upbringing and post-sentence rehabilitation represent extraordinary and compelling reasons as a stand-alone contention likewise fails.   Again, in a conclusory fashion and without development, defendant asserts that he was young at the time of the offense (27 years old), and thus, had, diminished culpability and a greater prospect for reform if given a second chance. Mr. Pabon-Mandrell says that "younger adults have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity and heedless risk-taking." (Docket No. 3049).  If the quoted statement sounds familiar, it is because it tracks the language from Supreme Court caselaw[4] that applies to juveniles, and stretches it rather disingenuously, to extend it to a 27-year-old individual.

---

[4] *Roper v. Simmons*, 543 U.S. 551, 569 (2005).

Further, and as stated above, while defendant claims to have had a difficult upbringing, he does not elaborate.  The Pre-Sentence Investigation report lacks any indication of a troubled childhood or difficult upbringing.  Quite the contrary.  The PSR mentions a loving home, where basic needs were met.

Defendant also states that in the 17 years he has been incarcerated, he has undergone a dramatic change, and has worked hard to improve himself and is committed to improving the lives of others.  However, he does not provide concrete examples or evidence.  At the very least, I would have expected to see a report of all the educational efforts and programing completed, progress reports, as well as information regarding his compliance with disciplinary rules and regulations.  Notwithstanding, even if the defendant had provided sufficient information, rehabilitation is not something that, by itself, the Court can consider as an extraordinary and compelling reason warranting a sentence reduction.  *Trenkler*, 47 F.4th at 47 ("[T]he only exception to what may constitute an extraordinary and compelling reason, as made explicit by Congress, is rehabilitation.")  And the Sentencing Commission's policy statement currently in effect is exceedingly clear on that point. *See* U.S.S.G. § 1B1.13(d).[5]

**B.  Section 404 of the First Step Act of 2018**

Next I consider whether the defendant is eligible for relief under section 404 of the FSA, and, if he is, whether the Court should exercise its discretion to reduce

---

[5] Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

defendant's sentence.  In responding to this claim, the government takes the position that "it is unclear whether Pabon is even eligible for relief under the First Step Act because, in addition to cocaine base, his conspiracy conviction involved mandatory-minimum-triggering quantities of heroin, cocaine, and marijuana; offenses involving these controlled substances are not covered by the Fair Sentencing Act." (Docket No. 3066 at 13.) I disagree.

The Fair Sentencing Act of 2010, Pub. L. No. 111-220, raised the threshold quantities of cocaine base thus altering the mandatory minimum sentences in 21 U.S.C. § 841(b)(1).  These changes, however, were not applicable to convictions or sentences imposed before August 3, 2010. *See Dorsey v. United States*, 567 U.S. 260, 132 S. Ct. 2321, 183 L. Ed 250 (2012).  Congress sought to change that with the enactment of the FSA. *See United States v. Smith*, 954 F.3d 446, 447-48 (1st Cir. 2020)(noting that the FSA "offers certain persons convicted under § 841 prior to enactment of the Fair Sentencing Act a chance to seek a retroactively reduced sentence.")

Specifically, section 404(b) of the FSA provides in pertinent part that "[a] court that imposed a sentence for a covered offense may, on motion of the defendant . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act of 2018, Pub. L. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018).  A covered offense is defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010." *Id*. §404(a).  Nevertheless, even if a defendant is eligible for relief, the FSA "gives district courts discretion to grant or deny a sentencing

reduction. *Smith*, 954 F.3d at 452 (quoting § 404(c): "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").  In the exercise of said discretion, district courts "may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a[n] FSA motion. *Concepcion v. United States*, 142 S. Ct. 2389, 2396, 213 L. Ed. 2d 730 (2022).

The defendant in this case was indeed convicted of, and sentenced for, a covered offense.  First, there is no dispute that Mr. Pabon-Mandrell was convicted and sentenced prior to August 3, 2010.  The offense of conviction is a conspiracy to violate 21 U.S.C. § 841(a).  The indictment alleged—and the jury found—several types and the minimum quantities of controlled substances necessary to trigger the mandatory minimum penalty of 10 years, and the maximum of life under 21 U.S.C. § 841(b), to wit, 1 kilogram or more of heroin, 5 kilograms or more of cocaine, 50 grams or more of cocaine base, and 100 kilograms or more of marijuana.  (Docket Nos. 1, 1123).[6]  But the fact that defendant was convicted of a multi-drug conspiracy, does not control the eligibility analysis. To determine eligibility under section 404, the Court should limit itself to look whether the offense of conviction was modified by the Fair Sentencing Act of 2010, and refrain from delving into the particulars of the record in order to determine how the defendant committed said offense. *United States v. Pierre*, 372 S. Supp. 3d 17, 22 (D.R.I. 2019); *see*

---

[6] Relevantly, with respect to cocaine base, the jury found the defendant to be responsible for in excess of 50 grams.  And at sentencing the Court found that more than 4.5 kilograms were attributable to the defendant for purposes of determining the base offense level under the guidelines. Calculations extrapolated from the evidence at trial estimated a conspiracy-wide amount of 109.2 kilograms of crack.

*also United States v. Smith*, 954 F.3d at 448 (a covered offense refers to the statute of conviction, 21 U.S.C. § 841(a), not the penalty provisions in § 841(b)(1)); *United States v. Rodriguez-Rodriguez*, No. 07-290 (FAB), ___ F. Supp. 3d ___; 2023 U.S. Dist. LEXIS 142769 at *9 (D.P.R., Aug. 14, 2023)(finding eligibility under section 404 because the statutory penalty for violating § 841(a) was altered by the FSA, and based on the 50 grams of crack charged in the indictment, the defendant would now be subject to a mandatory minimum of five years and a maximum of 40 years rather than 10 to life.).

In reaching this conclusion, and rejecting the government's contention, I am persuaded by the reasoning of the Seventh Circuit in the case of *United States v. McSwain*, 25 F.4th 533 (7th Cir. 2022). In that case, appellant McSwain sought review of the denial of his FSA motion which the district court had denied after finding him ineligible for relief, because in addition to cocaine base, he was found guilty of a quantity of heroin that qualified him for the same mandatory minimum sentence. *Id.* at 536. On appeal, the government agreed with the defense "that McSwain's multi-drug conspiracy is eligible for First Step Act relief." *Id.* The judgment of the district court was thus vacated, and the matter remanded to the district court for determination of whether the lower court would exercise its discretion to reduce the defendant's sentence. *Id.*

The analysis conducted by the *McSwain* panel regarding eligibility in the context of multi-drug conspiracies, involved a survey of its prior decisions as well as decisions from other circuits. *Id.* at 538. In the Seventh Circuit, it had been previously held that when a defendant has been sentenced for two crimes, only one of which is covered by the First Step Act, "a district judge has discretion to revise the entire sentencing package." *Id.* (citing *United States v. Hible*, 13 F.4th 647, 652 (7th Cir. 2021)). Other circuits had

reached similar conclusions. *McSwain*, 25 F.4th at 538 (collecting cases). The appellate court ultimately agreed with the parties—after the government reexamined its position—that "conspiracy to traffic crack cocaine in violation to 21 U.S.C. § 841(b)(1)(A)(iii) is a covered offense, 'even if another object of the conspiracy triggered the same statutory penalty range.'" *Id*. at 538-39.

And so it is here. Mr. Pabon-Mandrell was convicted of a multi-drug conspiracy, including conspiracy to possess with intent to distribute cocaine base. The threshold quantity of crack determined by the jury (50 grams), triggered a statutory minimum penalty of 10 years to life at the time of sentencing. Following the enactment of the Fair Sentencing Act, the same quantity of cocaine base now triggers a statutory penalty of not less than five (5) and not more than 40 years. *See* 21 U.S.C. §§ 841(b)(1)(A)(iii) and (b)(1)(B)(iii)(at least 28, but less than 280 grams required for a statutory minimum of 5 years, and a maximum of 40). It matters not that the conspiracy involved other controlled substances in quantities that still would result in a minimum of 10 years, and a maximum of life. *Rodriguez-Rodriguez*, 2023 U.S. Dist. LEXIS 142769 at *9 (finding eligibility even though the defendant was found guilty of a multi-drug conspiracy that included crack cocaine and other controlled substances.).

That a defendant is eligible for relief is not the end of the inquiry. As previously stated, Courts have discretion to deny relief under the FSA to otherwise eligible defendants. *Concepcion v. United States*, 142 S. Ct. at 2396. I must again note that the record is missing crucial evidence that should have been submitted by the defendant to put the Court in a better position to decide whether to use its discretion to grant a sentence reduction. But construing the pro se petition of the defendant liberally, I find

that it contains enough to tip the scales in favor of a reduction. And in so finding, I rely heavily on the Supreme Court's holding in *Concepcion*, allowing the Court to consider, among other things, intervening changes in the law, including changes to the sentencing guidelines.

First it is undeniable that life imprisonment is an exceedingly severe sentence. Statutorily, if sentenced today, Mr. Pabon-Mandrell would not be subject to a mandatory life sentence. This is so because section 401 of the FSA, amended the recidivist penalties in 21 U.S.C. § 841(b)(1) to provide that two or more prior convictions for a felony drug offense now trigger a mandatory minimum of 25 years as opposed to life imprisonment. And this is assuming that defendant's prior convictions still qualify as felony drug offenses, which is highly questionable post-FSA.[7] These are significant intervening changes in sentencing law that should be considered for they have drastically change the landscape for defendants convicted of crack cocaine offenses.

Second, under the guidelines, and if the Court follows the same approach as during the original sentencing hearing, the defendant's GSR would likely be lower. Because back when Mr. Pabon-Mandrell was sentenced, any amount of crack in excess of 4.5 kilograms resulted in the highest offense level of 38, the Court found that the

---

[7] Because section 401 of the FSA also amended the definition of "serious drug felony" in 21 U.S.C. § 802(57) to mean an offense described in 18 U.S.C. § 924(e)(2), and since the latter defines serious drug offense in relevant part as "an offense under State law, involving manufacturing, distributing, or **possessing with intent to manufacture or distribute, a controlled substance** . . . for which a maximum term of imprisonment of ten years or more is prescribed by law" 18 U.S.C. § 924(e)(A)(ii)(emphasis ours), the defendant's two prior article 404 Puerto Rico convictions (simple possession), would not qualify under this definition. *See United States v. Russell*, No. 05-CR-00257-SLB-HNJ-10, 2021 WL 1597927; 2021 U.S. Dist. LEXIS 78514 at *22 (N.D. Ala., April 23, 2021)(as per section 401 of the FSA, a prior Alabama simple possession conviction did not qualify as a "serious drug felony" because it did not involve manufacture or distribution.)

22

evidence at trial easily supported that amount. (*See* Transcript, Docket No. 47).  But the Court also discussed scenarios yielding conspiracy-wide amounts of cocaine base as high as 109.2 kilograms during the span of the conspiracy. (*Id*. at 48.)  While the Court did not necessarily make the specific finding that the full amount was foreseeable to the defendant here, the inference is reasonable given his role in the offense and the length of his participation in the conspiracy.  Ultimately, it was not necessary for the Court to make the specific finding, because even under the scenario most favorable to the defendant— 4.5 kilograms—a base offense level of 38 was established.

Today, if the Court followed the same guideline calculation, and used the 4.5 kilograms as starting point, the base offense level would be 34. U.S.S.G. § 2D1.1(c)(3)(at least 2.8 but less than 8.4 kilograms).  All other enhancements undisturbed: two (2) levels for protected location; (4) levels for leadership role; and two (2) levels for weapons, the total adjusted offense level would be 42.  A total offense level of 42 and a criminal history category of I, yields an advisory GSR of 360 months to life.  On the other hand, if we assume the worse-case scenario for the defendant in terms of the quantity of drugs where the GSR was still life, it would not be mandatory life under the statute.  The Court would have discretion to vary from the advisory GSR.

Again, these are significant changes in the law that the Court could consider in deciding whether to exercise its discretion to reduce defendant's sentence, and if so, how much.  *United States v. Flemming*, No. ELH-08-086, 2022 WL 743955; 2022 U.S. Dist. LEXIS 43421 (D. Md., Mar. 11, 2022)(reducing defendant's sentence from life to 30 years under the FSA where defendant no longer would qualify for mandatory life.); *United States v. Day*, 474 F. Supp. 3d 790 (E.D. Va. 2020)(granting FSA motion for defendant

that received mandatory life, taking into consideration that one of the defendant's prior convictions no longer qualifies as a § 851 predicate.); *United States v. Hadley*, 389 F. Supp. 3d 1043 (M.D. Fla. 2019).

## IV.   CONCLUSION

In view of the foregoing, I recommend that defendant's motion be GRANTED in part and DENIED in part.  It should be GRANTED as to section 404 of the FSA.  It should be DENIED without prejudice as to the compassionate release request.  In making this recommendation, I defer to the Presiding Judge, in the use of her discretion and express no view as to whether the Court should ultimately reduce the sentence of Mr. Pabon-Mandrell, and if so, how much.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within 14 days**. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED**

In San Juan, Puerto Rico this 22nd of December, 2023.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE

24